UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LYNNE P. COLIZZO,

    Plaintiff,

        v.                                       C.A. NO.

HIGHGATE HOTELS GP, LLC, AS
GENERAL PARTNER OF HIGHGATE HOTELS, LP.

    Defendant.

## PLAINTIFF'S COMPLAINT FOR AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT

Now Comes the Plaintiff Lynne P. Colizzo ("Plaintiff"), by and through her attorney, and hereby files this civil action Complaint and Jury Demand ("Complaint") against Defendant Highgate Hotels, LP ("Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1. This action is brought by Plaintiff seeking declaratory and injunctive relief and compensatory and punitive damages for acts and/or omissions of the Defendant in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28- 5-1, et seq. ("FEPA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, et. seq. ("RICRA").

2. The Plaintiff, at all times relevant hereto, is a resident of the City of Providence, County of Providence, State of Rhode Island.  At all times relative herein, the Plaintiff was over 40 years of age, see 29 U.S.C. § 631(a).

3. Defendant is a foreign limited partnership duly organized and incorporated under the laws of the State of Delaware, with a principal office located at 545 E. Carpenter Way, Suite 1400, Irving, TX  75062.  Defendant is the general partner of Highgate Hotels, LP., and as such, is liable

for the acts and omissions of said Highgate Hotels, LP.  At all times relevant herein, the Defendant was an "employer" as defined by §11(b) of the Age Discrimination in Employment Act, as amended [29 U.S.C. §630(b)].

**4**.  The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADEA.

**5**.  Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

**6**.  This civil action challenges Defendant's unlawful age discrimination with respect to its hiring policies and practices.

## FACTS RELEVANT TO THIS HEREIN COMPLAINT

**7.**  In April of 1988, the Plaintiff was hired by the Defendant's predecessor, as a Hotel Operator.

**8.**  During 1989, the Plaintiff was promoted into a position in Reservations.

**9.**  During 1990, the Plaintiff was promoted to Front Desk Coordinator.

**10.**  During 1995, the Plaintiff was promoted to the position of Accounts Receivable Clerk, which was later expanded to Accounts Receivable Clerk/Payroll Processer.  The Plaintiff's position was neither management, nor union.

**11**.  Among non-management and non-union employees, the Plaintiff was the oldest employee in the hotel. The Plaintiff even won the 2005 ROSE award, awarding her the winner for Recognition of Service Excellence for the state of RI.

**12.**  During May of 2016, the Plaintiff filed a complaint with her superiors against Jennifer Bergeron, who was the Assistant Director of Finance, and who was one of the Plaintiff's supervisors, regarding an unfair yearly review.

**13.**  The Plaintiff filed said complaint with Jane Eccleston, HR Director, and Kim Alves, Director of Finance.  Ms. Eccleston and Ms. Alves agreed to re-do the Plaintiff's review in 6 months and have Ms. Alves conduct said review, other than Ms. Bergeron.

**14**.  At all times relevant hereto, the manager (Jennifer Bergeron) mentioned in this said complaint, was an acting agent of the Defendant.

**15.**  When management of the Defendant conducted the aforementioned review 6 months later, they found that Ms. Bergeron was incompetent, and did not allow her to conduct any more reviews of the Plaintiff in the future.

16. Since 2016, Ms. Bergeron tried to blackball the Plaintiff within the Defendant and its predecessor.

17. The Defendant purchased the hotel in 2017.

18. When the Defendant purchased said hotel, all previous employment records were removed from the property and were held by the previous owners, which included records relative to the above complaint filed by the Plaintiff.  Therefore, when Ms. Bergeron retaliated against the Plaintiff, the Defendant did not have those records in which to review.

19. In 2018 and 2019, the Plaintiff was bypassed for bonuses, of which she was qualified.  The Defendant, knowing it was the Plaintiff's job to process the payroll, had her enter these bonuses, which included an employee with less than one year of seniority and the Plaintiff's co-worker of approximately 7 years, while simultaneously and intentionally excluding the Plaintiff.  The Plaintiff was informed that this decision rested solely on the Defendant's General Manager, Scott Williams.

20. During August 2019, Rayma Ferrer, the Regional Director of HR, asked the Plaintiff some probing questions while on a lunch break. The Plaintiff, assuming Ms. Ferrer was looking out for her employees' well-being, expressed to Ms. Ferrer a fear of her job being outsourced to India, since approximately 2% of the Plaintiff's duties had already been outsourced.

21. Ms. Ferrer reassured the Plaintiff that only tedious tasks were being outsourced to India, to make more time available for more detailed tasks.  About three weeks later, Ms. Bergeron repeatedly told the employees in the Accounting Department [where Plaintiff worked] that 80% of the entire Accounting Department tasks were expected to be outsourced to India.

22. In late September 2019, Ms. Ferrer, in a meeting with the Plaintiff, the Director of Finance, and the HR Manager, offered the Plaintiff a severance package of six weeks and informed the Plaintiff that her services were no longer needed.  On this day, Ms. Ferrer apologized to the Plaintiff by referencing their previous month's conversation when Ms. Ferrer reassured the Plaintiff that her duties would not be outsourced to India.  Ms. Ferrer stated that because of that false assurance, she was offering the Plaintiff an alternative to severance pay, which was 3 days of work in the Accounting office with the possibility of finding a 4th and possibly a 5th day of work somewhere else inside of that hotel.

23. A few days later, the Plaintiff informed Ms. Ferrer and Ms. Lafratta that she was declining the severance pay and had decided to remain employed by the Defendant.  She added that she felt it a privilege to be an employee of the prestigious Biltmore Hotel, therefore wanted to stay. At that point, there was a discussion of giving the Plaintiff three [3] days in Accounting and filling her other two [2] days in another position.  On this day when the Plaintiff was inquiring additional work to fill a 40-hour work week, Ms. Lafratta suggested the Plaintiff take a

dishwasher position, but in her subsequent sentence retracted the offer, for the sole source reason that the dishwasher position is for union employees only.

24. Subsequent to the Plaintiff 's refusal of severance pay, Jennifer Bergeron attempted twice to lure the Plaintiff to the Hotel Indigo, which was in Newton, MA, but she was not interested due to the commute. In the meantime, the Plaintiff opened a profile on LinkedIn, seeking a possible part-time position to compensate for the loss in pay, due to her alleged job abolishment. Shortly afterwards, the Plaintiff notified Alyssa Mariano (HR Asst) regarding the LinkedIn account, to ensure them that she was only seeking a part-time position and that she was not looking to leave the hotel. The following workday, Naomi Arruda, who is in her 20s, reported to the Plaintiff's department to train for the position in Newton, MA.

25. The Newton hotel position, which Ms. Bergeron tried to push the Plaintiff to take, was scheduled for closure within 1-2 years, which was not mentioned to the Plaintiff.

26. The Plaintiff had been told by Ms. Ferrer that she was to keep her hands out of Accounts Receivable duties, because the position was abolished, and that she was to pass all of her files to Ms. Bergeron. It was at this point, due to the Defendant's intentionally misleading comments, that the Plaintiff was under the assumption that Ms. Bergeron would be training Metriqe (accounting company in India), and she would forward these tasks to them after they were completely trained on hotel procedures.

27. In November 2019 there was a conference call with Mr. Oftring, Ms. Bergeron, Diana Gagnon from Accounts Payable, Michael Youssef [from corporate], and the Plaintiff. Ms. Bergeron expected the Plaintiff to resume the duties of her abolished position. Ms. Bergeron stated she was overwhelmed in taking over the Plaintiff's position and she could not complete all the Accounts Receivable tasks, as the Plaintiff had done prior to the above changes, along with maintaining her own responsibilities.

28. In early December 2019, Ms. Lafratta harassed the Plaintiff by docking the Plaintiff a holiday's pay. The action was disputed by the Plaintiff to her immediate manager, Mr. Oftring, who in turn approached Mr. Williams for verification, since he agreed with the Plaintiff. Mr. Williams agreed that the holiday pay should not have been docked and instructed Ms. Lafratta to process the backpay in the next pay period, to which she made clear that she did not agree but would comply.

29. On February 17, 2020, Ms. Bergeron, in an email copied to Scott Williams, General Manager, gave the Plaintiff back 75% of her previous AR tasks, but to still complete within the 3 days/week of her Accounting hours; to wit, one [1] day to Payroll Process, two [2] days to do the rest of the AR tasks, and two [2] days in Reservations. The following day, the Plaintiff discovered that it was Ms. Bergeron who commenced the idea (at least superficially, and or temporarily) to perform the duties of the Plaintiff, causing Ms. Bergeron to work until 11:00 PM in the office and from her home on the weekends, resulting from the abolishment of the

Plaintiff's position.  These actions of Ms. Bergeron mystified the head of that Accounting Department on all levels.

30.  The Defendant, through its agents and employees, attempted to give the Plaintiff back approximately 75% of her former tasks that were said to be abolished, but did not give her back the five [5] day period to complete said tasks.  The Plaintiff feels that this restriction on her work hours was designed as a set-up for failure, which is officially labeled as a Negatively Inconsistent Workload.

31.  The last 25 years of the Plaintiff's 32 years consisted of performing AR tasks, the Defendant's agents and employees knew there was no way the Plaintiff could complete Payroll Processing and Accounts Receivable successfully in 3 days.

32.  On February 20, 2020, in a conversation with Mr. Oftring, Ms. Lafratta, and Mr. Williams, the Plaintiff was made aware of false reporting of labor statistics; having the corporate office believe that work was being outsourced to India when it was still being performed on hotel property, thus using this false reporting to cover up the lie about abolishing the Plaintiff's job.

33.  The Plaintiff realized that no additional Accounts Receivable tasks, aside from the 2% previously noted, were being performed by India, which was proof that her work was not going to India.  When the Defendant, through its agents and employees, tried to give her back her work, this also illustrated that her Accounts Receivable tasks were not, and were never, abolished.

34.  After the Plaintiff left the February 20th meeting, she inquired with Sharon Keeler, Director of Revenue, about a transfer to Reservations on a full-time basis.  Mr. Williams approved, but the Plaintiff was still expected to continue to Payroll Process for 1 day/week, and Reservations 4 days/week.

35.  On March 20, 2020, the whole staff was furloughed because of the Covid-19 pandemic.

36.  On June 12, 2020, Scott Williams phoned the Plaintiff, with Rayma Ferrer conferenced in, to inform the Plaintiff that her status was going from furlough to laid off immediately.  They used the Covid-19 pandemic as a pretext.  They also used the entire office outsourcing to India as a pretext.  Mr. Williams informed the Plaintiff that her layoff had nothing to do with her work performance and that when the hotel reopens, she was welcome to apply for any position available.  This verbiage by Mr. Williams was treated as a termination, not a layoff.

37.  The Plaintiff alleges that she had been discriminated against because of her age (52), and retaliated against for opposing unlawful employment actions, in violation of the Age Discrimination in Employment Act of 1967, as amended, and all applicable state statutes.

38.  The Defendant's policy of terminating employees based upon the maximum years of experience for jobs, including the Plaintiff's position, from which the Plaintiff was fired, discriminates against older workers in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.  The policy is based on unfounded stereotypes and assumptions about older workers.

**39.** Plaintiff brings this action seeking a declaration that the Defendant's policies and practices violate the ADEA.  Plaintiff also seeks a permanent injunction requiring that such policies and practices be eliminated.

**40.** The Plaintiff filed a complaint with the EEOC, as #523-2020-01539.  The said complaint was filed on June 23, 2020, and a Dismissal and Notice of Rights was issued to the Plaintiff on October 26, 2020.  The Plaintiff has satisfied all of the procedural preconditions to allow her to file this herein complaint.

### COUNT ONE
Unlawful Intentional Age Discrimination (Disparate Treatment) in Violation of the ADEA, 29 U.S.C. § 621 et seq.

**41.** The Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

**42.** The Plaintiff filed a timely charge of age discrimination with the EEOC, as set forth above, has exhausted his administrative remedies, and she timely files this suit following notice of her right to sue.

**43**. At all relevant times, the Defendant has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630. At all relevant times, the Defendant has been engaged in interstate commerce within the meaning of the ADEA, and has employed, and continues to employ, twenty or more employees.

**44.** The Defendant's violations of the ADEA were intentional and willful.

**45.** As a direct and proximate result of the foregoing violations of the ADEA, the Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within the Defendant.

Wherefore, the Plaintiff prays for:

a. Lost wages, employment benefits, and other compensation lost to her as a result of the Defendant's discriminating against her on the basis of his age, and prejudgment interest.

b. Liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to her as a result of Defendant's discriminating against her on the basis of her age.

c. Reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

d. Such other relief that this Court deems just and appropriate.

## COUNT TWO

[Intentional Infliction of Emotional Distress]

**46.** Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

**47.** The Defendant, through its agents and employees, intentionally caused severe emotional distress to the Plaintiff by their willful, wanton, extremely reckless and indifferent conduct, including but not limited to, engaging in senseless emotional attacks upon the person of the Plaintiff which directly led to her severe mental injuries.

**48.** The actions of the Defendant, through its agents and employees, go well beyond all bounds of decency and were done with the purpose of inflicting emotional distress.

**49.** The aforesaid actions by the Defendant, through its agents and employees, were so outrageous in character and were so extreme in degree that a reasonable member of the community would regard such conduct as atrocious, going beyond all possible bounds of decency and as being utterly intolerable in a civilized community. Such actions included GM Scott Williams attempting to delegitimize the Plaintiff's ROSE award, awarding her the 2005 winner for Recognition of Service Excellence for the State of RI. Disparaging it by attempting to attribute it to her years.

**50.** As a direct actual and proximate result of the Defendant's [through its agents and employees] extremely, reckless and indifferent conduct, the Plaintiff has suffered, and continues to suffer, severe emotional distress and mental anguish.

> WHEREFORE, the Plaintiff demands judgment against the Defendant herein, in an amount which meets the jurisdictional limits of this Honorable Court, together with attorney's fees, punitive damages, costs, and any further relief this Honorable Court shall deem just and proper.

## COUNT THREE

[Negligent Infliction of Emotional Distress]

**51.** Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

**52.** The Defendant, through its agents and employees, negligently caused severe emotional distress to the Plaintiff by their extremely negligent actions and breach of their duty of care, including but not limited to, engaging in a senseless mental and emotional attacks upon the person of the Plaintiff, which directly led to her severe injuries.

53. As a direct, actual and proximate result of the Defendant's [through its agents and employees] extremely, negligent, reckless and indifferent conduct, the Plaintiff suffered, and continues to suffer, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff demands judgment against the Defendant herein, in an amount which meets the jurisdictional limits of this Honorable Court, together with attorney's fees, punitive damages, costs, and any further relief this Honorable Court shall deem just and proper.

## COUNT FOUR

[Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq.]

54. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

55. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the FEPA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FEPA.

## COUNT FIVE

[Rhode Island Civil Rights Act of 1990  
R.I. Gen. Laws § 42-112-1, et. seq.]

56. Plaintiff hereby repeats and incorporates by reference all paragraphs above as if fully articulated herein.

57. The Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of age against Plaintiff, and thereby interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

> WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant the following relief:
>
> 1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADEA, the FEPA, and/or the RICRA.
>
> 2. An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An injunction and/or other equitable relief, including but not limited to, an award of back pay as well as front pay and other compensation and/or benefits to make her whole for all earnings and benefits she would have received but for Defendant's discriminatory conduct.

4. An award of compensatory damages.

5. An award of exemplary and/or punitive damages.

6. An award of liquidated damages.

7. An award of prejudgment interest, reasonable attorneys' fees, and costs.

8. Such other and further relief as this Court deems just and proper.

Dated:  January 13, 2021

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE IN THIS ACTION.**

Respectfully submitted,

 /s/ David L. Graham

_____
David L. Graham, Esq. #3034
Graham Law Offices
840 Smithield Avenue, Unit 204
Lincoln, RI 02865
(401) 861-4056